## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

YAHYI SHIHEED,                        *

         Plaintiff,                 *

v.                                *         Civil Action No. GLR-14-1351

OFFICER G. SHAFFER, et al.,       *

         Defendants.            *

                                 ***

### MEMORANDUM

THIS MATTER is before the Court on Defendants', Officer G. Shaffer and Officer S. Rosenberg, Motion to Dismiss, or in the Alternative for Summary Judgment. (ECF No. 15). Upon review of the Motion and the Opposition thereto (ECF No. 17), the Court finds no hearing necessary. See Local Rule 105.6 (D.Md. 2014). For the reasons stated below, the Motion will be DENIED.

### I.     BACKGROUND

Plaintiff Yahyi Shiheed, an inmate currently confined at the North Branch Correctional Institution ("NBCI"), filed the instant action alleging that, on November 18, 2013, Defendants assaulted him. Plaintiff states that Shaffer placed one handcuff on Plaintiff's wrist and then hit and punched him. He states that both Defendants called him racist names. Shaffer handcuffed Plaintiff to the outside of his cell door, and left him there for approximately five minutes. Plaintiff states that he suffered bruises to his wrists. He indicates that both officers shoved his hands in the slot because Plaintiff asked to speak to a supervisor.

Defendants Romesburg and Shaffer aver that, on November 18, 2013, they were assigned to the administrative/disciplinary segregation unit where Plaintiff was housed.  (ECF Nos. 15-7; 15-8).  Romesburg saw Plaintiff holding his food slot open which is a breach of security.  (ECF No. 15-7).  Plaintiff refused to allow Romesburg to close the slot and Romesburg called for assistance to which Shaffer responded.  (Id.).  When Shafffer arrived, he observed Plaintiff holding his food slot open and refusing to comply with Romesburg's orders to close the slot. (ECF No. 15-8).

Shaffer and Romesburg talked to Plaintiff in an effort to have him comply with orders to close the feed slot, but Plaintiff refused.  (ECF Nos. 15-7, 15-8).  Shaffer and Romesburg tried to push Plaintiff's arms into his cell to close the slot, but Plaintiff resisted.  (ECF No. 15-7). Shaffer asked Plaintiff if he would come out of the cell to speak with a supervisor, and Plaintiff agreed.  (ECF Nos. 15-7, 15-8).  He was directed to place his hands out of the slot to be handcuffed, and Plaintiff complied.  After Shaffer applied the first handcuff, Plaintiff pulled away, attempting to pull the handcuff through the slot into the cell.  (Id.).  Shaffer held onto the handcuffs and made what he describes as a "spontaneous 'split second' decision to" secure them to the cell door to prevent Plaintiff from taking the cuffs into his possession and possibly using them as a weapon.  (Id.).

Shaffer began to leave the area to inform the Sergeant of the situation, but decided to try again to convince Plaintiff to cooperate.  Plaintiff agreed to have the handcuffs removed, and they were removed without further incident.  Romesburg and Shaffer aver that Plaintiff was handcuffed to the cell door only momentarily, for no more than 15 seconds.  (Id.). Plaintiff

reported to the IIU investigator that he was handcuffed for approximately two minutes. (ECF No. 15-6).

Romesburg and Shaffer state they did not strike, hit, or punch Plaintiff. (ECF Nos. 15-7, 15-8). They further aver that neither Romesburg nor Shaffer witnessed the other strike, hit, or punch Plaintiff. Romesburg and Shaffer were both interviewed by an investigator from the Internal Investigation Unit ("IIU") based on Plaintiff's Complaint of staff assault. (ECF No. 15-6).

Plaintiff identified two other inmates as witnesses to the incident and advised IIU that he was "slightly" injured. (ECF No. 15-6). Inmate Dicks was interviewed by IIU. He reported that he returned to his housing unit from a medical appointment and noticed Plaintiff's arm handcuffed to the cell door handle. He believed that Plaintiff was handcuffed to the door handle for 5-8 minutes. Dicks stated that he did not observe any officer close the food slot on Plaintiff's arm. (Id.).

IIU also interviewed Inmate Philips, who stated that Plaintiff had his arm out of the food slot because he wanted to see a sergeant. (Id.). When an officer directed Plaintiff to get his arm back in the cell, Plaintiff waved his arm. Phillips stated that the officer grabbed Plaintiff's arm and handcuffed it to the cell door handle. Phillips indicated that Plaintiff remained handcuffed for ten minutes. Phillips also stated that he observed two officers pushing on the slot, but he did not witness any officers punch Plaintiff.

## II.    DISCUSSION

### A.  Standard of Review

To survive a Rule 12(b)(6) motion to dismiss, a complaint must set forth "a claim to

relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 556.  "In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).

"When 'matters outside the pleading are presented to and not excluded by the court, the 12(b)(6) motion shall be treated as one for summary judgment and disposed of as provided in Rule 56.'" Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 260-61 (4th Cir. 1998) (quoting Fed.R.Civ.P. 12(b)).  Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a).

In reviewing a motion for summary judgment, the Court must draw all justifiable inferences in the non-moving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 158-59 (1970)).  Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48.

4

A "material fact" is one that might affect the outcome of a party's case.  Id. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)).  Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265.

Here, because the Court will consider matters outside of the pleading, the Motion will be construed as a Motion for Summary Judgment.

**B. Analysis**

**1. Exhaustion**

Defendants maintain that the Complaint should be dismissed for failure to exhaust administrative remedies.  The Prisoner Litigation Reform Act ("PLRA") provides in pertinent part: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e (2012).  The statute's exhaustion provision requires inmates to pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process.  Chase v. Peay, 286 F.Supp.2d 523, 530 (D.Md. 2003), aff'd, 98 F.App'x 253 (4th Cir. 2004).

In Maryland, filing a request for administrative remedy with the warden of the prison is the first of three steps in the ARP process. The Division of Correction's Directive on Administrative Remedy Procedures, DCD # 185-002 outlines the ARP process.  The ARP must

be filed within 30 days of the date on which the incident occurred, or 30 days of the date the inmate first gained knowledge of the incident or injury giving rise to the complaint, whichever is later.  DCD # 185-002, § VI.L.3.  If the request is denied, a prisoner has thirty calendar days to file an appeal with the Commissioner of Correction. DCD # 185-002, VI. M.1. If the appeal is denied, the prisoner has thirty days to file a grievance with the Executive Director of the Inmate Grievance Office.  See Md. Code Ann. Corr. Serv. §§ 10-206, 10-210 (West 2015); Md. Code Regs. 12.07.01.03 (2015); see also DCD # 185-002, § VI.N.1.  In order to show administrative exhaustion, the plaintiff must demonstrate that he appealed his grievance to the Inmate Grievance Office through all three steps in the administrative process.

The PLRA requires only that a Plaintiff exhaust "available" remedies.  Plaintiff's claim was referred to the IIU, therefore, the administrative processing of that ARP ceased.  There were no further remedies available to Plaintiff once the IIU began its investigation of his claim of excessive force.  Accordingly, the Court finds Defendants have not demonstrated Plaintiff failed to exhaust his available administrative remedies.

## 2.  Excessive Force

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm."  Hudson v. McMillian, 503 U.S. 1, 6 (1992) (quoting Whitley v. Albers, 475 U.S. 312, 320-21 (1986)).  This Court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the

response.  See Whitley v. Albers, 475 U. S. 312, 321 (1986).  The absence of significant injury alone is not dispositive of a claim of excessive force.  See Wilkens v. Gaddy, 559 U.S. 34, 37 (2010).  The extent of injury incurred is one factor indicative of whether or not the force used was necessary in a particular situation, but, if force is applied maliciously and sadistically, liability is not avoided simply because the prisoner had the good fortune to escape serious harm. Wilkens, 559 U.S. at 38.

Plaintiff admits that held his food slot open in order to protest the denial of recreation in the housing unit and so that he could speak with the Sergeant.  He further admits that he refused to close the slot when requested to do so.  Plaintiff's actions constitute a breach of security. Defendants attempted to gain Plaintiff's compliance verbally and then moved to physically push Plaintiff's arms into his cell.  When that failed, Plaintiff was offered an opportunity to speak to the Sergeant.  As Shaffer applied the handcuffs, Plaintiff moved in an effort to pull the handcuffs into the cell.  Shaffer, in an effort to prevent Plaintiff from pulling the handcuffs into his cell and creating a more dangerous situation, handcuffed Plaintiff to the cell door.  The parties do not dispute that Plaintiff remained so confined for a matter of minutes.  The parties dispute whether Defendants punched and hit Plaintiff in an effort to gain his compliance.

In cases where, as here, defendants offer little to no justification for the alleged application of force (punching and hitting in order to close the slot; handcuffing to the cell door) there exists a genuine dispute of material fact regarding whether the force was applied maliciously precluding summary judgment.  The issue requires determinations not presently appropriate for resolution on summary judgment.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

The determination of whether Defendants are entitled to qualified immunity is more appropriately addressed after the facts of the case have been developed and a determination has been made as to whether Plaintiff has suffered a violation of his constitutional rights. Accordingly, dismissal of the Complaint based on qualified immunity is not proper at this time. The Court will, therefore, deny the Motion.

### III.   CONCLUSION

For the aforementioned reasons, the Correctional Officers' Motion, construed as a Motion for Summary judgment, is DENIED.   A separate Order follows.


/s/

August 18, 2015          _____
Date                     George Levi Russell, III
                         United States District Judge